FILED

2013 DEC -3 PM 3: 46

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

Civil Action No. _____

1:13 CV 2665

PROCOM SUPPLY, LLC, a Colorado limited liability company,

Plaintiff,

v.

JUDGE GWIN

MECHEL LANGNER, an individual,
AHARON MANN, and individual,
THE FIRST NATIONAL GROUP, LLC, a limited liability company,
L AND M REALTY BROKERS LLC, a limited liability company,
FIRST NATIONAL MANAGEMENT LLC, a limited liability company,
and REAL INVESTORS LLC, a limited liability company,

MAG. JUDGE VECCHIARELLI

Defendants.

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff Procom Supply, LLC, through counsel, Richard G. Convertino of Convertino & Associates, and Anthony L. Leffert of Robinson Waters & O'Dorisio, P.C., hereby asserts its Verified Complaint and Jury Demand against Defendants Mechel Langner, Aharon Mann, The First National Group LLC, L and M Realty Brokers LLC, First National Management LLC, and Real Investors LLC (collectively "Defendants"), and in support states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Procom Supply, LLC ("Procom") is a Colorado limited liability company with its principal place of business located at 1450 Wynkoop Street, Loft 1F, Denver, Colorado 80202. Wayne Dale is the sole member and 100% owner of Procom. Wayne Dale is domiciled in Colorado with his principal place of business located at 1450 Wynkoop Street, Loft 1F, Denver, Colorado 80202.

2.  Defendant Mechel Langner is domiciled in the State of New York and resides at 406 Avenue I, Brooklyn, New York 11230.

3.  Defendant Aharon Mann is domiciled in the State of New York and resides at 45-15 12th Avenue, Apartment D-2, Brooklyn, New York 11219.

4.  Defendant Real Investors LLC ("Real Investors") is an Ohio limited liability company with a principal place of business at 3631 Shannon Road, Cleveland Heights, Ohio 44118. Upon information and belief and reasonable inquiry, Real Investors has five members who are all individuals: Defendant Mechel Langner and Defendant Aharon Mann, who are both domiciled in New York; and Daniel Kasnett, who is domiciled in Ohio.[1]

5.  Defendant L and M Realty Brokers LLC ("L and M Realty") is a Pennsylvania limited liability company and is believed to have a principal place of business located at 17 Warren Road, Suite 10A, Pikesville, Maryland 21208. Upon information and belief and reasonable inquiry, Defendant Mechel Langner, domiciled in New York, and Defendant Aharon Mann, domiciled in New York, are the members of L and M Realty.[2]

6.  Defendant The First National Group LLC ("First National Group") is a Maryland limited liability company and is believed to have a principal place of business located at 17 Warren Road, Suite 10A, Pikesville, Maryland 21208. Upon information and belief and reasonable inquiry, Defendant Mechel Langner, domiciled in New York, and Defendant Aharon Mann, domiciled in New York, are the members of First National Group.[3]

---

[1] Real Investors LLC's membership information is from a deposition Plaintiff conducted of Daniel Kasnett.

[2] L and M Realty Brokers LLC's membership information is from depositions Plaintiff conducted of Daniel Kasnett and from undersigned counsel's investigation of Pennsylvania real estate records in Pennsylvania.

[3] First National Group's legal existence in Maryland was forfeited on October 3, 2011. Additionally, in May, 2011 First National Group's registered agent, Jonathan Friedman, resigned. According to Mr. Friedman, Defendant Mann and Defendant Mechel Langner are First National Group's members.

7. Defendant First National Management LLC ("First National Management") is a Maryland limited liability company and is believed to have a principal place of business located at 17 Warren Road, Suite 10A, Pikesville, Maryland 21208. Upon information and belief and reasonable inquiry, Defendant Mechel Langner, domiciled in New York, and Defendant Aharon Mann, domiciled in New York, are the members of First National Management.[4]

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between the parties as the Plaintiff is domiciled in Colorado. Only Defendant Real Investors is domiciled in Ohio and the other Defendants are domiciled in Pennsylvania, New York, and Maryland. The amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue for this action is proper in the United States District Court for the District of Ohio, pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## GENERAL ALLEGATIONS

10. Each of the individual defendants in this case are members of the orthodox Jewish community and reside either in Cleveland, Ohio or New York, New York. Additionally, upon information and belief, Defendants Aharon Mann and Mechel Langer also occasionally reside in Jerusalem, Israel.

11. All of the individual Defendants are linked by Daniel Kasnett, who resides in the orthodox Jewish community in Cleveland, Ohio, and who has worked directly for or with each of the individual defendants.

---

[4] First National Management's legal existence in Maryland was forfeited on October 3, 2011. Additionally, in May, 2011, First National Management's registered agent, Jonathan Friedman, resigned. According to Mr. Friedman, Defendant Mann and Defendant Mechel Langner are First National Management's members.

12. Defendant Fred Schwartz, an attorney in Ohio, represented Reuben Green, Defendant Mann, and Daniel Kasnett both as a lawyer and as a partner in business entities. (See Deposition of Schwartz at pp. 8-12 attached hereto as Exhibit 1.) In addition, Mr. Kasnett has been known to Defendant Schwartz for a long time as Mr. Kasnett's parents live in Defendant Schwartz's neighborhood and Daniel Kasnett's father is one of the local rabbis. (See Exhibit 1 at p. 26.)

13. Defendant Schwartz organized Defendant Real Investors and was its managing member. (See Exhibit 1 at p. 66.) Defendant Schwartz, Reuben Green, Defendant Mann, Defendant Mechel Langner, and Mr. Kasnett are all members of Real Investors, which was formed to raise money to invest in an internet company called Real Prospex. (See Exhibit 1 at pp. 27-28 and 57-60.) However, the money Real Investors has raised has also been used by its members for various other purposes.

14. Mr. Kasnett and Mr. Wayne Dale, the owner and sole member of Plaintiff Procom, entered into and completed a series of real estate transactions in the Cleveland area during 2006 and 2007. These projects primarily involved the purchase and sale of houses.

15. Following the completion of the sale of the houses in late 2007 or early 2008, Daniel Kasnett and his related business affiliates solicited Procom to invest in a multi-tenant condominium building at the Cleveland Clinic in Cleveland, Ohio (the "Cleveland Project"). Based upon Mr. Kasnett's representations that the money would be used for the development of real estate, Procom invested $189,000 in the Cleveland Project (the "Invested Funds").

16. The parties never executed any written contract or other document regarding this intended investment. Procom did not receive any consideration in exchange for what it believed to be its investment in the Cleveland Project. The unwritten agreement between Procom and

Mr. Kasnett was that Procom was to invest the Invested Funds in the Cleveland Project as an equity investor, which funds would be repaid with profits when the Cleveland Project was completed.

17. Mr. Kasnett's representations to Mr. Dale concerning the Cleveland Project were false. The Cleveland Project, as represented to Mr. Dale, did not exist. (See Deposition of Kasnett at pp. 58-75, attached hereto as Exhibit 2.) Mr. Kasnett also misrepresented the actual intended use of the Invested Funds. Mr. Kasnett used the Cleveland Project as a way to fraudulently solicit and obtain the Invested Funds from Procom. (See id.)

18. Mr. Kasnett never intended the Invested Funds to be invested in the nonexistent Cleveland Project. Instead, Mr. Kasnett specifically intended that the Invested Funds would be distributed to the Defendants to be used for their own personal uses.

19. Relying on Mr. Kasnett's representations and at his direction, on or about September 25, 2008, Procom wired the Invested Funds from its bank account at Mile High Banks to a bank account in the name of Defendant Real Investors at The Huntington National Bank. (See Exhibit 3 attached hereto, Mile High Banks Outgoing Wire Transfer Request, and Exhibit 4 at p. 1, Reference No. 0088801958, attached hereto, Huntington National Bank Statement and Transaction Detail Reports.) Mr. Kasnett had apparent and actual authority to bind Real Investors through the utilization of Real Investors' bank account to commit the fraud. In addition, Mr. Kasnett acted as an agent for Defendant First National Group in transferring money to its bank account and from there to Defendant L and M Realty. Mr. Kasnett and Defendant Real Investors acted as an agent for both Defendant First National Group and Defendant L and M Realty.

20. On or about September 25, 2008, Real Investors transferred $150,000 of the Invested Funds from its Huntington National Bank account to a checking account in the name of Defendant First National Group at JPMorgan Chase Bank. (See Exhibit 4, Reference Nos. 0088802974 and 0088803145, and Exhibit 5 at p. 1 attached hereto, JPMorgan Chase Bank statement.)

21. On or about September 26, 2008, Defendant First National Group transferred $50,587.63 from its JPMorgan Chase Bank checking account to a line of credit account in the name of Defendant L and M Realty at JPMorgan Chase Bank. (See Exhibit 5 at p. 2, Transaction No. 161381829.) Upon information and belief, Defendant L and M Realty used this $50,587.63 to pay down its outstanding line of credit loan with JP Morgan Chase Bank. (See Exhibit 6 attached hereto, JPMorgan Chase Bank Transaction History report.)

22. On or about September 29, 2008, Defendant First National Group transferred $45,000 from its JPMorgan Chase Bank checking account to a checking account in the name of Defendant L and M Realty at JPMorgan Chase Bank. (See Exhibit 5 at p. 2 and Exhibit 7, JPMorgan Chase Bank statement at p. 2, Transactions Nos. 161832185 and 161831628.) Upon information and belief, Defendant L and M Realty used $34,822.50 of these funds to pay its own debts and expenses and/or make investments in its own name. (See Exhibit 7 at p. 3, Transactions Nos. 0232800273Es, 0826100275Es, and 1019200280Es.)

23. On or about September 29, 2008, Defendant L and M Realty transferred the remaining $10,000 of the $45,000 it received from Defendant First National Group from its JP Morgan Chase Bank checking account to a bank account in the name of Defendant Aharon Mann also at JPMorgan Chase. (See Exhibit 7 at p. 3 and Exhibit 8, JPMorgan Chase Bank checking account at p. 2, Transaction No. 0234100273Es.)

24. On or about September 29, 2008, Defendant First National Group transferred $20,000 from its JPMorgan Chase Bank checking account to its own JPMorgan Chase Bank money market account. (See Exhibit 5 at p. 2 and Exhibit 9, JPMorgan Chase Bank statement, Transaction No. 161831995.) Upon information and belief, on or about the same day Defendant First National Group used this $20,000 to pay down its debt with American Express. (See Exhibit 9, American Express Web Remit No. 080928060919013.)

25. On or about September 29, 2008, Defendant First National Group transferred $10,000 from its JPMorgan Chase Bank checking account to a checking account at JPMorgan Chase Bank in the names of Defendant Mechel Langner and Barbara Langner. (See Exhibit 5 at p. 2 and Exhibit 10 at p. 2 attached hereto, JPMorgan Chase Bank statement, Transaction No. 161831318.) Upon information and belief, the Langners used $7,000 of these funds to pay down their outstanding debt with American Express and transferred the remaining $3,000 to their offshore bank account with First International Bank of Israel. (See Exhibit 10 at p. 2, American Express Web Remit 080928060922275 and Transaction No. 0220100180Es, respectively.)

26. On or about September 29, 2008, Defendant First National Group transferred $10,000 from its JPMorgan Chase Bank checking account to a money market account in the name of Mechel Langner or Barbara Langner also at JPMorgan Chase Bank. (See Exhibit 5 at p. 2 and Exhibit 10 at p. 2, Transaction No. 161829618.) On or about October 6, 2008, the Langners transferred $15,000 to Defendant L and M Realty's checking account with JPMorgan Chase Bank. (See Exhibit 10 at p. 2 and Exhibit 7 at p. 2, Transaction No. 163907757.)

27. On or about September 29, 2008, Defendant First National Group transferred $9,500 from its JPMorgan Chase Bank checking account to an unknown bank account in the

name of Defendant First National Management. (See <u>Exhibit 5</u> at p. 2, Transaction No. 0465900273Es.)

28. Daniel Kasnett repeatedly represented to Procom's owner, Mr. Dale, that the Cleveland Project was progressing and even told Mr. Dale that it had been completed when, in fact, the Cleveland Project never actually existed. (See <u>Exhibit 2</u> at pp. 56-57, 60-62.)

29. Despite Procom's demands and the filing of this suit with service of process effected on the Defendants, none of the Defendants have returned the monies they obtained from Procom's Invested Funds.

30. The Defendants intended to permanently deprive Procom of its invested funds. Despite having knowledge of a demand for repayment, the Defendants have failed and refused to repay Procom the money which they wrongfully took and which was part of the fraudulent scheme.

## FIRST CLAIM FOR RELIEF
### (Unjust Enrichment)

31. Plaintiff incorporates herein all prior allegations.

32. Defendant Real Investors initially received the $189,000 of Invested Funds as a result of Mr. Kasnett's fraudulent misrepresentations concerning the Cleveland Project to Wayne Dale and Procom. The Cleveland Project did not actually exist, and Mr. Kasnett used the Project as a way to fraudulently solicit and obtain the Invested Funds from Procom.

33. Defendant L and M Realty received a total sum of $99,410.13 belonging to Procom as a result of Kasnett's fraudulent misrepresentations to Wayne Dale and Procom concerning the Cleveland Project and have failed to return the money to Procom.

34. Defendant Aharon Mann received $10,000 belonging to Procom as a result of Kasnett's fraudulent misrepresentations to Wayne Dale and Procom concerning the Cleveland Project and has failed to return the money to Procom.

35. Defendant First National Group received $20,000 belonging to Procom as a result of Kasnett's fraudulent misrepresentations to Wayne Dale and Procom concerning the Cleveland Project and has failed to return the money to Procom.

36. Defendant Mechel Langner received $10,000 belonging to Procom as a result of Kasnett's fraudulent misrepresentations to Wayne Dale and Procom concerning the Cleveland Project and have failed to return the money to Procom.

37. Defendant First National Management received $9,500 belonging to Procom as a result of Kasnett's fraudulent misrepresentations to Wayne Dale and Procom concerning the Cleveland Project and has failed to return the money to Procom.

38. Defendants L and M Realty, Aharon Mann, First National Group, Mechel Langner, and First National Management have received a substantial benefit by retaining substantial sums that they received as a result of fraudulent misrepresentations to Wayne Dale and Procom.

39. Procom did not receive any consideration in exchange for its intended investment in the Cleveland Project as the Project did not actually exist.

40. Procom intended the Invested Funds to be invested in the Cleveland Project, which Daniel Kasnett fabricated in order to fraudulently solicit the Invested Funds from Procom and Mr. Dale. The Invested Funds that were supposed to be invested in this real estate project were instead distributed to the Defendants for their own personal use without Procom's knowledge or consent.

41. Defendants L and M Realty, Aharon Mann, First National Group, Mechel Langner, and First National Management have no right to retain to the Invested Funds. Under these

circumstances, it would be unjust to allow the Defendants to retain money belonging to Procom that Mr. Kasnett misrepresented would be invested in the nonexistent Cleveland Project.

42. Defendants Real Investors, L and M Realty, Aharon Mann, First National Group, Mechel Langner, and First National Management are liable on the theory of unjust enrichment for the amount of money belonging to Procom that each received and retained.

## SECOND CLAIM FOR RELIEF
### (Conversion/Civil Theft – All Defendants)

43. Plaintiff incorporates herein all prior allegations.

44. Mr. Kasnett deceived Procom by misrepresenting to Mr. Wayne Dale, Procom's agent, that the Cleveland Project existed and that Procom's Invested Funds would be invested and used for the supposed real estate project. Procom transferred the Invested Funds to Real Investors in reliance on Mr. Kasnett's misrepresentations that the Funds would be invested in the Cleveland Project.

45. Mr. Kasnett, as an agent for Defendant Real Investors, used the fictitious Cleveland Project as a vehicle by which to fraudulently solicit and obtain the Invested Funds from Procom with the specific intent to use the funds not for an actual real estate investment but for the Defendants' personal use.

46. Procom did not authorize Real Investors to distribute the Invested Funds to the Defendants, at all times believing that the money would be used to finance the Cleveland Project. In fact, Mr. Kasnett repeatedly misrepresented to Mr. Dale that the Cleveland Project was progressing and later even that the Project had been completed. By this conduct, the Real Investors, by and through its agent, Mr. Kasnett, committed an unauthorized act of dominion or ownership over the Invested Funds, which belonged to Procom.

47. Real Investors, by and through its agent, Mr. Kasnett, willfully and knowingly obtained or exercised control over the Invested Funds as a direct result of Mr. Kasnett's act of deception, namely his misrepresentations to Mr. Dale concerning the existence of the Cleveland Project and the use to which the Invested Funds would be put.

48. Real Investors, by and though its agent, Mr. Kasnett, specifically intended to deprive Procom permanently of the use or benefit of the Invested Funds as Ms. Kasnett misrepresented that the Invested Funds would be invested in a real estate project that did not, in fact, exist. Instead, Real Investors diverted the Invested Funds to the Defendants for their own personal use and never intended to actually invest the money in a real estate project.

49. It has now been four years since the Defendants obtained the Invested Funds, and despite Procom's demands and service of the original Complaint in this case claiming that the Defendants obtained their respective portions of the Invested Funds by theft, none of the Defendants have repaid Procom. Further, each of the Defendants used the money they received for their personal benefit. Thus, Defendants had the specific intent to permanently deprive Procom of the Invested Funds.

50. The Invested Funds constitute a thing of value.

51. Real Investors converted the Invested Funds. The Defendants are or were persons in possession of the Invested Funds, which Real Investors converted.

52. Real Investors took by theft the Invested Funds. The Defendants are or were persons in possession of the Invested Funds, which Real Investors obtained by theft.

53. As a result of the Defendants' actions, Procom has suffered money damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
(Civil Conspiracy – All Defendants)

54. Plaintiff incorporates herein all prior allegations.

55. Daniel Kasnett made numerous fraudulent misrepresentations to Procom by and through its member and agent, Mr. Wayne Dale, regarding the Cleveland Project. In fact, the Cleveland Project never existed.

56. Procom invested $189,000 in the Cleveland Project based on Kasnett's misrepresentations. At Mr. Kasnett's instruction, Procom wired the Invested Funds to Defendant Real Investors.

57. At the time the Invested Funds Procom wired the Invested Funds to Real Investors, in reliance on Kasnett's misrepresentations concerning the Cleveland Clinic, Defendants Mechel Langner, Mann, along with Mr. Kasnett were members of Real Investors.

58. Through their actions as members of Real Investors and taking Procom's money, Defendants Mechel Langner, and Mann, along with Mr. Kasnett agreed and conspired to solicit Procom to wire the Invested Funds to Real Investors LLC by misrepresenting the existence of the Cleveland Project. These individual Defendants, as members of Real Investors, conspired and agreed among themselves and Mr. Kasnett to then distribute the Invested Funds from Real Investors to themselves and their related entities or affiliates for their own personal use.

59. Defendants obtained the funds by civil theft and/or conversion, through Mr. Kasnett's misrepresentations to Mr. Dale concerning the Cleveland Project.

60. Without the fraudulent misrepresentations to Procom, the Defendants would not have been able to receive and retain the funds belonging to Procom.

61. Procom has been damaged by the Defendants' conspiracy as the Invested Funds were never invested in the intended real estate project and were never returned to Procom.

## JURY DEMAND

Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff prays this honorable Court will enter judgment in its favor and against Defendants Mechel Langner, Aharon Mann, The First National Group LLC, L and M Realty Brokers LLC, First National Management LLC, and Real Investors LLC on the claims set forth above, including compensatory damages, post-judgment interest, attorneys' fees and costs, exemplary damages, and for all such other and further relief as the Court deems equitable and proper.

Respectfully submitted this 3rd day of ~~October~~ December, 2013.

CONVERTINO & ASSOCIATES

s/Thomas J. Gruscinski
Thomas J. Gruscinski
25150 Randall Drive
North Olmstead, OH 44070
Telephone: (440) 779-0064
Email: tjg@convertino.net

s/Richard G. Convertino
Richard G. Convertino
424 N. Main Street
Plymouth, MI 48170
Telephone: (734) 927-9900
Facsimile: (734) 927-9904
Email: rgc@convertino.net

and

ROBINSON WATERS & O'DORISIO, P.C.

s/Anthony L. Leffert
Anthony L. Leffert, *Motion Pro Hac Vice pending*
1099 18th Street, Suite 2600
Denver, CO 80202
Telephone: (303) 297-2600
Facsimile: (303) 297-2750
Email: aleffert@rwolaw.com

*Attorneys for Plaintiff Procom Supply, LLC*

## VERIFICATION

I, Wayne Dale, being of lawful age and being first duly sworn, state that I have read the foregoing VERIFIED COMPLAINT AND JURY DEMAND and its contents therein are true to my best information and belief.

Dated this 16 day of October, 2013.

_____
Wayne Dale
Manager
Procom Supply, LLC

STATE OF COLORADO       )
                        )
CITY & COUNTY OF DENVER )

Wayne Dale did appear before me, a Notary Public, this 16a day of October, 2013, and signed the foregoing Verified Complaint and Jury Demand.

(SEAL)

_____
Notary Public
My commission expires: 7/6/2014