```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
PROCOM SUPPLY, INC.,                    :
                                        :    Case No. 1:13-cv-2665
              Plaintiff,                :
                                        :
vs.                                     :    OPINION & ORDER
                                        :    [Resolving Doc.42]
LANGNER, et al.,                        :
              Defendants.               :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Mechel Langner moves for relief from default judgment, claiming the Court lacks subject matter and personal jurisdiction over Plaintiff's claims.

For the reasons stated below, the Court **DENIES** Langner's motion to set aside judgment.

## I.     Background

On December 3, 2013 Plaintiff Procom Supply, Inc ("Procom") sued Langner and Aharon Mann, as well as four limited liability companies.[1] Both Langner and Mann are members of the sued limited liability companies.[2] After Langner failed to answer or otherwise defend, on April 8, 2014 Procom moved for default judgment against Langner.[3] On April 24, 2014 the Court granted this motion.[4]

On April 6, 2016 Langner failed to appear for a properly noticed deposition related to efforts to enforce the default judgment.[5] On June 10, 2016 Plaintiff moved for the

---

[1] Doc. 1. The four companies are First National Group LLC, First National Management LLC, Real Investors LLC, and L & M Realty Brokers LLC. *Id.*
[2] *Id.*
[3] *See* Doc. 16, 19.
[4] Doc. 21.
[5] *See* Doc. 31.

Case No. 1:13-cv-2665
Gwin, J.

issuance of a bench warrant. On August 9, 2016 the Court granted Plaintiff's motion, issuing the bench warrant, as well as sanctions against Langner.[6]

On August 15, 2019 Langner filed a Rule 60(b) motion to set aside the default judgment and to set aside the August 9, 2016, bench warrant.[7]  On August 29, 2019 Procom opposed.[8]

On October 7, 2019 the Court ordered Procom to provide supplemental briefing on whether Defendant Mann was diverse.  On October 21, 2019 Procom responded.[9]  On November 4, 2019 Langner replied.[10]

## II. Langner's Challenge to this Court's Personal Jurisdiction Was Not Raised Within a Reasonable Time.

Langner argues that he was not properly served with summons in this action and argues that this Court had no personal jurisdiction over him.[11]  Procom responds that Langner's challenge to the Court's personal jurisdiction, raised over 5 years after this case was filed, is untimely.[12]

Rule 60 requires that motions for relief from a final judgment "be made within a reasonable time."[13]  "The reasonable time standard has been interpreted to depend on the factual circumstances of each case."[14]  Pertinent considerations include "the interest in

---

[6] *Id.*
[7] Doc. 42.
[8] Doc. 44.  On September 12, 2019 Langner replied to Procom's opposition.  Doc. 46. On September 20, 2019 Procom filed a supplemental response.  Doc. 47.
[9] Doc 48.
[10] Doc. 49.
[11] Doc. 42 at 13-14.
[12] Doc. 44 at 10-12.
[13] Fed. R. Civ. Pro. 60(c)(1).
[14] *Smith v. Secretary of Health and Human Services*, 776 F.2d 1330, 1333 (6th Cir. 1985).

Case No. 1:13-cv-2665
Gwin, J.

finality, the reason for the delay, the ability of the party to learn earlier of the grounds relied on and prejudice to the opposing party."[15]

Procom filed this case on December 3, 2013.[16] After Defendants did not respond, the Court granted default judgment to Procom on April 24, 2014.[17] Langner did not file his motion to set aside the judgment until August 15, 2019, more than five years after judgment had been given.[18]

Langner claims that he first became aware of this case on November 30, 2017 and has been challenging the judgment in Israeli courts since then.[19] But Procom served Langner with the original complaint at 406 Avenue I, Brooklyn, New York 11230 (the Brooklyn residence) in January 2014.[20] And in September 2015 the Israel Office of Foreign Legal Affairs served Langner in Jerusalem. Langner received notice in conformity with the Hauge protocol, giving him notice of his default in this case.[21]

Langner asserts that he could not have been personally served then, as he was traveling with his family outside of the country.[22] Yet the Israel Office of Foreign Legal Affairs certification of service makes no mention of personal service—it merely states that "service of documents upon Mechel Langner has been executed."[23] Accordingly, Langner

---

[15] *U.S. v. Real Property Known and Numbered as 429 South Main Street, New Lexington, Ohio*, 906 F. Supp. 1155, 1164 (S.D. Ohio 1995) (citing *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610-11 (7th Cir. 1977)).
[16] Doc. 1.
[17] Doc. 21.
[18] Doc. 42.
[19] Doc. 42-1 at ¶ 42.
[20] Doc. 6.
[21] Doc. 44-1. *See also* Fed. R. Civ. Pro. 4(f) (allowing service on an individual in a foreign jurisdiction "by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents").
[22] Doc. 46 at 1-2.
[23] Doc. 44-1.

-3-

Case No. 1:13-cv-2665
Gwin, J.

has not presented clear evidence to overcome the presumption that the Israeli officials carried out their duties and properly served Langner.[24]

Langner knew of the Court's order granting default judgment in late 2015, and he could have raised any challenges to the Court's personal jurisdiction and subject-matter jurisdiction immediately. Instead he delayed for nearly four years. Langner's delay in filing the Rule 60(b) motion is not reasonable. Therefore, the Court rejects his challenge to the Court's personal jurisdiction as untimely.

### III. The Court Has Subject-Matter Jurisdiction Over Langner

Langner argues that the Court lacks subject-matter jurisdiction over himself and his co-defendant Aharon Mann.[25] He alleges that they are both United States citizens, but neither is domiciled in any state, and therefore the Court cannot have diversity jurisdiction over them under 28 U.S.C. § 1332.[26]

As explained above, Langner has not raised his challenge to the Court's jurisdiction within a reasonable time. Yet the Sixth Circuit has noted that a "motion seeking to vacate a judgment for lack of subject-matter jurisdiction might *not* be subject to a reasonable-time requirement" because "objections to subject-matter jurisdiction may not be waived or forfeited."[27] Therefore, the Court considers Langner's diversity-jurisdiction challenge.

---

[24] *U.S. Chemical Foundation,* 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").
[25] Doc 42 at 6-7.
[26] *Id.*
[27] *Days Inns Worldwide, Inc. v. Patel,* 445 F.3d 899, 905 n.7 (6th Cir. 2006); *see also Cent. Vt. Pub. Serv. Corp. v. Herbert,* 341 F.3d 186, 189 (2d Cir. 2003).

Case No. 1:13-cv-2665
Gwin, J.

Under 28 U.S.C. § 1332(a)(1), federal district courts have diversity jurisdiction over civil matters where the controversy is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  The United States Supreme Court has "read the statutory formulation [of 28 U.S.C. § 1332(a)(1)] to require complete diversity between all plaintiffs and all defendants."[28]  The parties must have diversity of citizenship at the time the suit is commenced.[29]  " 'Citizen' and its variant 'citizenship' have acquired a particular meaning in our law as being equivalent to 'domicile.' "[30]

"In elemental terms, domicile consists of (1) residence and (2) an intent to remain there."[31]  One's domiciles is the "true, fixed, and permanent home . . . . [and] the place to which [one] returns whenever he [or she] is absent."[32]  "An individual . . . may have several residences, but only one domicile."[33]  Although courts may consider one's declared intent to remain in a location, these declarations may be overcome by contrary evidence.[34]

"One acquires a 'domicile of origin' at birth, and that domicile continues until a new one (a 'domicile of choice') is acquired."[35]  Once a person establishes a new domicile, that "domicile is not lost until a new one is acquired."[36]

---

[28] *Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005).
[29] *Mallon v. Lutz*, 217 F. Supp. 454, 455 (E.D. Mich. 1963) (citing *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957)).
[30] *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 389 (6th Cir. 2016) (citing *Von dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990)).
[31] *Id*. at 390 (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)).
[32] *Eastman v. University of Michigan*, 30 F.3d 670, 672-73 (6th Cir. 1994).
[33] *Eastman*, 30 F.3d at 673.
[34] *See Mallon*, 217 F. Supp. at 456 (citing *Welsh v. Am. Surety Co. of N.Y.*, 186 F.2d 16, 18 (5th Cir. 1951)) ("Declarations of intention to establish domicile in a particular locality may be negative by other declarations and inconsistent acts.").
[35] *Mississippi Band of Choctaw Indians*, 490 U.S. at 48.
[36] *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990).

Case No. 1:13-cv-2665
Gwin, J.

Plaintiff Procom was domiciled in Colorado when it sued.[37] Langner contests whether Langner and Mann were domiciled in Israel when this case was filed. If either were domiciled in Israel, that defendant would be a "stateless" person for the purpose of diversity.[38] If either defendant were a "stateless" person, the parties would not be completely diverse and the Court would have no jurisdiction.[39] But if both defendants were domiciled in New York, the Court would have diversity jurisdiction.

The burden rests on the party seeking exercise of the Court's jurisdiction to demonstrate that the Court indeed has jurisdiction.[40] Plaintiff Procom must show by a preponderance of the evidence that both Langner and Mann were domiciled in New York on December 3, 2013.[41]

### a. Defendant Langner Was Diverse with Plaintiff Procom

The Court accepts as uncontested that Langner was born in New York and lived for many years in Brooklyn.[42] During this time Langner was domiciled in New York.[43]

According to Langner, he moved to Israel in 1996 for school.[44] He claims that he permanently moved to Israel in 2000 when he married.[45] He further asserts that he has not maintained his New York residency since 2000.[46]

---

[37] Doc. 1, 42 at 10.
[38] See 28 U.S.C. § 1332; *Nat. Enterprises, Inc. v. Smith*, 114 F.3d 561, 566 (6th Cir. 1997).
[39] See *Nat. Enterprises, Inc.*, 114 F.3d at 566.
[40] See *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).
[41] *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936) ("[T]he court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.").
[42] Doc. 42-1.
[43] See *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).
[44] Doc. 42 at 4.
[45] *Id*.
[46] *Id*. at 6.

-6-

Case No. 1:13-cv-2665
Gwin, J.

Langner offers evidence that he has established a new residence in Israel. He states that he lives in Jerusalem with his wife and children, has leased a home there since 2000, and his children attend school there.[47] Langner also notes that he pays utilities, has health insurance, and owns a car in Israel; he does none of these in the United States.[48]

Procom does not provide any evidence to show that Langner does not have a residence in Israel. The weight of the evidence thus suggests that Langner has indeed established a residence in Israel.

Procom does provide evidence, however, that Langner did not intend for Israel to be his permanent home.

Procom submitted copies of Langner's Israeli visas that were valid from September 2009 to September 2013.[49] Both visas are student visas that state that Langner is "not permitted to work" in Israel.[50] As Langner is a United States citizen and has no Israeli citizenship,[51] this suggests that his presence in Israeli had been only temporary.

Procom also gives evidence that Langner maintained a residence at 406 Avenue I, Brooklyn, New York (the Brooklyn residence) and that this residence was Langner's true home. It notes that Langner used bank accounts in New York in 2008.[52] Langner also deposited checks into a New York bank account in late 2008, writing the address for the Brooklyn residence by hand on the deposit slip's "Customer Address" section.[53] Langner

---

[47] *Id.* at 5.
[48] *Id.*
[49] Doc. 44-25.
[50] *Id.*
[51] Doc. 42-1.
[52] Doc. 44-5.
[53] Doc. 44-6.

Case No. 1:13-cv-2665
Gwin, J.

further received a federal tax refund, federal economic stimulus payment, and a New York tax refund addressed to the Brooklyn home in 2008 and 2009.[54] He also received numerous checks addressed to this same Brooklyn home in 2008.[55]

Procom also submitted the testimony of Daniel Kasnett, Langner and Mann's business partner, who in 2012 indicated that Langner was "located" in Brooklyn.[56] Additionally, Langner filed a lawsuit in 2008 that listed his "post office address" as the Brooklyn residence.[57] A foreclosure action was also brought against Langner in 2009 for the same Brooklyn residence.[58]

Langner's evidence suggests that his current residence is in Israel, but this evidence has limited utility in determining when, if ever, he decided to make the Jerusalem residence his permanent one. Taken as a whole, the evidence does not support an inference that Langner changed his intent before December 2013.

Furthermore, Langner's assertion that "[s]ince 2000, Jerusalem has been [his] permanent and exclusive residence and home," made in an affidavit,[59] is undercut by Procom's objective evidence that Langner maintained an active residence in New York after 2000.

---

[54] Doc. 44-7, 44-8.
[55] Doc. 44-10. This evidence not only supports Procom's theory that Langner still maintained a residence in New York in 2013, but also undercuts Langner's sworn declaration that "[t]he Brooklyn Address has not been used at any time in the last 19 years as [his] residence, dwelling place, actual place of business, or usual place of abode for service of process purposes (or any other purpose)." Doc. 46-1.
[56] Doc. 44; Doc. 44-24.
[57] Doc. 47-1.
[58] Doc. 47-2.
[59] *Id.*

-8-

Case No. 1:13-cv-2665
Gwin, J.

Considering the foregoing, the weight of the evidence suggests that Langner did not intend for Israel to be his permanent residence after 2000. And absent a permanent change in residency, Langner cannot have changed his domicile.[60] The Court finds that Langner was New York domiciled when the complaint was filed and was therefore diverse with Procom.

### IV. The Court Does Not Have Subject-Matter Jurisdiction Over Mann

#### a. Defendant Mann Was Not Diverse with Plaintiff Procom

Procom alleges that Mann was domiciled in Brooklyn, New York, when this case was filed.[61] It notes that Mann was a member in a New York company that issued wire transfers to Mann at a Brooklyn address in 2008.[62] Procom further notes that in 2008 Mann had a bank account listing his address as 1254 44th Street, Brooklyn, New York.[63]

Langner offers evidence to counter Procom's position. In a 2018 affidavit Mann states that he was born in Israel, but resided in Brooklyn, New York between 1986-1991 on a Permanent Resident Card.[64] There Mann contends that he had resided in Israel since 1991.[65]

The record does not show when, if ever, Mann became domiciled in New York. Though he may have resided there between 1986 and 1991, Procom has offered no evidence to suggest that Mann intended to permanently remain in Brooklyn during that

---

[60] *See Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990) ("Establishment of a new domicile is determined by two factors: residence in the new domicile, and the intention to remain there.").
[61] Doc. 48 at 2.
[62] *Id.*; Doc. 48-1.
[63] Doc. 48 at 2; Doc. 48-1.
[64] Doc. 49-1.
[65] Doc. 49-1. Mann's affidavit references electric bills and identification that might support his claim to Israeli residency, but neither he nor Langner have provided this supporting documentation to the Court.

-9-

Case No. 1:13-cv-2665
Gwin, J.

time. Similarly, Procom's evidence suggests that Mann may have had a New York residence in 2008. But Langner's evidence suggests that Mann also had an Israeli residence at that time, and neither party provides evidence identifying which residence was Mann's permanent home.[66]

Mann's domicile of origin is in Israel, and that domicile continues until a new one is acquired.[67] The burden is on Plaintiff Procom to show by a preponderance of the evidence that Mann acquired a new New York domicile. Procom has not satisfied this burden. The Court finds that Procom does not show that Mann was Brooklyn domiciled when this case was filed, and therefore was not diverse with Procom.

Since Mann was not diverse with Procom, it follows that each of the limited liability companies of which he is a member is not diverse with Procom either.[68] The presence of these nondiverse parties would usually require the Court to dismiss the suit entirely.[69] But Federal Rule of Civil Procedure 21 also permits the Court to dismiss those nondiverse

---

[66] Procom is correct that "residency may serve as prima facie evidence of a party's domicile." *Naji v. Lincoln*, 665 Fed.Appx. 397, 400 (6th Cir. 2016) (citing *Fort Knox Transit v. Humphrey*, 151 F.2d 602, 602-03 (6th Cir. 1945)); *see also* Doc. 48 at 2. But the Sixth Circuit limits the application of this rule to cases "where domicile is unchallenged" and "where the record reveals no contrary indications." *Id.* Procom must then show more than mere residency to prove Mann's domicile. *See Steigleder v. McQuesten*, 198 U.S. 141, 143 (1905) ("[I]t has been long settled that residence and citizenship are wholly different things within . . . the laws defining and regulating the jurisdiction of the circuit courts of the United States; and that a mere averment of residence in a particular state is not an averment of citizenship in that state for the purposes of jurisdiction.").

[67] *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

[68] *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) ("The general rule is that all unincorporated entities—of which a limited liability company is one—have the citizenship of each partner or member."); *cf. Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 184 (3d Cir. 2008) ("Putting these principles together, that is, that the citizenship of the individual partners must be shown to be wholly diverse from that of the opposing party (or those of the opposing parties) and that American citizens living abroad cannot sue (or be sued) in federal court based on diversity jurisdiction, our sister circuits and other federal courts have concluded that if a partnership has among its partners any American citizen who is domiciled abroad, the partnership cannot sue (or be sued) in federal court based upon diversity jurisdiction.").

[69] *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) ("When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal.").

Case No. 1:13-cv-2665
Gwin, J.

parties so long as they are not indispensable.[70] The Sixth Circuit determines whether a party is indispensable under Federal Rule of Civil Procedure 19.[71]

To determine whether Mann is indispensable, Procom and Langner shall file briefing discussing whether Defendant Mann or any of the four limited liability companies are indispensable parties.

V. Conclusion

Langner's Rule 60(b) motion for relief was not filed within a reasonable time and is denied; the Court has personal jurisdiction over Defandant Langner. The Court also finds that Defendant Langner was diverse with Plaintiff Procom when this case was filed. But the Court finds that Defendants Mann, First National Group LLC, First National Management LLC, Real Investors LLC, and L & M Realty Brokers LLC are not diverse with Plaintiff Procom. The Court orders Procom and Langner to file briefing discussing whether any of these defendants are indispensable. The parties will file simultaneous briefing on or before December 23, 2019.

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to set aside judgment.

IT IS SO ORDERED.

Dated: December 11, 2019            *s/     James S. Gwin*
                                    JAMES S. GWIN
                                    UNITED STATES DISTRICT JUDGE

---

[70] "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; see also New-man Green, 490 U.S. at 832 ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered.").

[71] See Laethem Equipment Co. v. Deere & Co., 485 Fed.App'x 39, 43-44 (6th Cir. 2012) (describing the three-part test to determine whether a party is indispensable).